# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

JAMES TARPEY,

Plaintiff and Counter-Defendant,

vs.

UNITED STATES,

Defendant and Counter-Plaintiff.

**CV-17-94-B-BMM**

**ORDER**

Defendant and Counter-Plaintiff the United States has filed the following motions: (1) Motion for Order/Judgment Applying Issue Preclusion (Doc. 28), and (2) Motion for Summary Judgment Regarding Liability (Doc. 30.) Plaintiff and Counter-Defendant James Tarpey ("Tarpey") opposes both motions. (Docs. 36, 38.) The Court held a hearing on the motions on March 6, 2019, in Great Falls, Montana. (Doc. 50.)

## BACKGROUND

Tarpey formed Project Philantropy, Inc. d/b/a/ Donate for Cause ("DFC") in or about 2006. DFC operated a business that facilitated the donation of timeshares. Timeshares often involve significant fees and expenses, including membership

fees, maintenance fees, and the payment of real estate taxes. A timeshare's market value may be significantly less than the timeshare owner's original purchase price. DFC allowed timeshare owners who faced burdensome timeshare fees and expenses to donate their unwanted timeshares.

Tarpey formed DFC as a non-profit organization. Tarpey served as the sole voting member of DFC. Tarpey possessed authority to nominate and remove board members. Tarpey obtained tax-exempt status for DFC from the Internal Revenue Service ("IRS").

Tarpey promised potential customers generous tax savings from donations of their unwanted timeshares. Tarpey hired real property appraisers Ron Broyles and Curt Thor to conduct timeshare appraisals for DFC. Tarpey and his sister Suzanne Tarpey also conducted timeshare appraisals for DFC. Suzanne Tarpey served as the secretary, treasurer, and bookkeeper of DFC.

Tarpey founded a for-profit timeshare closing service that operated as Resort Closings. Resort Closings initially provided closing services for the sale of timeshares. Tarpey eventually integrated his timeshare donation business, operated through DFC, into his timeshare closing business at Resort Closings. Resort Closings handled the real estate closings for timeshares donated to DFC.

DFC accepted timeshares into its donation program. DFC would then open a "closing file" on these donated timeshares with Resort Closings. DFC and Resort

Closings marketed generous tax savings of up to $6,000 for donated timeshares. DFC accepted at least 7,600 timeshare donations. Tarpey, Suzanne Tarpey, Broyles, and Thor appraised the timeshares for DFC.

## A. *Tarpey I* (the Injunction Lawsuit)

The United States filed an action to enjoin six defendants, including the Tarpey, Suzanne Tarpey, Ron Broyles, Curt Thor, Resort Closings, and DFC, from engaging further in timeshare donation practice and appraisal. The United States alleged that the timeshare closing business constituted a "bogus tax scheme." (2:15-cv-00072-SEH, Doc. 1.)

The United States alleged that the customers contacted DFC to inquire about donating an unwanted timeshare. *Id.* at 7. The United States alleged that DFC enlisted an appraiser to determine the fair market value of the timeshare. *Id.* at 8. The United States alleged that DFC used a conflicted appraiser who overstated the value of the timeshare. *Id.* The United States alleged that DFC acted merely as a conduit to hold title briefly to timeshares before being sold for a fraction of the appraised amount. The United States alleged that DFC falsely told customers that they could deduct the full appraised amount of the timeshare, conducted by DFC, and the associated processing fees. *Id.*

The court in *Tarpey I* entered final judgments of permanent injunction against all six defendants. (2:15-cv-00072-SEH, Docs. 36, 88, 89, 90, 103, 124.)

Tarpey consented to judgment against him. (2:15-cv-00072-SEH, Doc. 90.) The consent judgment permanently enjoined Tarpey from: (1) preparing (or assisting others in preparing) any property appraisal that will be used in connection with federal taxes; (2) encouraging or advising (or assisting others in encouraging or advising) others to claim charitable contribution deductions on any federal tax return; and (3) organizing, promoting, selling, marketing, or advising with respect to (or assisting others in organizing, promoting, selling, marketing, or advising with respect to) any plan or arrangement regarding charitable contribution deductions claimed on federal tax returns. *Id.* at 2.

The United States filed an unopposed motion for summary judgment against Broyles on February 10, 2017. (2:15-cv-00072-SEH, Doc. 116.) Broyles previously had been represented by counsel. The court permitted Broyles's attorney to withdraw on November 22, 2016. (2:15-cv-00072-SEH, Doc. 112.) Broyles did not oppose the United States's motion for summary judgment. The court granted the United States's motion for summary judgment on March 3, 2017, and the Court entered final judgment. (2:15-cv-00072-SEH, Doc. 123, 124, 125.)

### B. *Tarpey II* (the Present Action)

The Treasury Department assessed penalties against Tarpey pursuant to the conduct at issue in *Tarpey I*. Tarpey brought the present action against the United States on December 27, 2017. (Doc. 1.) Tarpey filed his Amended Complaint on

April 20, 2018. (Doc. 10.) Tarpey alleges that he did not overestimate the fair market value of timeshares. *Id.* at 6. Tarpeys alleges that the IRS inaccurately assessed penalties against him. *Id.* Tarpey seeks a refund of amounts paid toward the penalties made against him. *Id.* at 13.

The United States filed a counterclaim against Tarpey. (Doc. 11.) Tarpey seeks a money judgment for the unpaid balance of the penalties. *Id.* The United States has moved for summary judgment regarding the issue of Tarpey's liability under 26 U.S.C. § 6700. (Doc. 28.) The United States's motion does not seek resolution of the amount of penalties as this issue must be reserved for trial. *Id.*

## LEGAL STANDARDS

Summary Judgment is appropriate where the movant demonstrates that no genuine dispute exists "as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 5(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment may be rendered on liability despite a remaining genuine issue regarding the amount of damages. *See Pac. Fruit Express Co. v. Akron, Canton & Youngstown R.R. Co.*, 524 F.2d 1025, 1029-30 (9th Cir. 1975). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-23. If the moving party satisfies that burden, summary judgment shall be

granted unless the non-moving party demonstrates "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

## DISCUSSION

To establish a penalty under 26 U.S.C. § 6700(a)(2)(A), the United States must show by a preponderance of the evidence that (1) the defendant organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement; (2) the defendant made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement; (3) the defendant knew or had reason to know that the statements were false or fraudulent; and (4) the defendant's false or fraudulent statements pertained to a material matter. *United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000).

Tarpey concedes that he organized or participated in the organization of an entity, plan, or arrangement. (Doc. 38 at 2.) Tarpey makes no argument with regard to whether the alleged false or fraudulent statements pertained to a material matter. *Id.* Accordingly, only the second and third elements remain at issue. The Court will discuss each of these two elements.

## I. Tarpey Made or Caused to be Made, False or Fraudulent Statements Concerning the Tax Benefits to be Derived from the Entity, Plan, or Arrangement

The second element of 26 U.S.C. § 6700(a)(2)(A) requires the moving party to show by a preponderance of the evidence that the nonmoving party made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement. *See Estate Pres. Servs.*, 202 F.3d at 1098. The appraisals of timeshare to be donated to DFC represent the alleged false statements at issue. The United States asserts that Tarpey made false statements by preparing appraisals himself. (Doc. 31 at 16.) The United States also contends that Tarpey caused others to make or furnish similar appraisals. *Id.* The United States asserts that Tarpey's connection to DFC disqualified him as an appraiser for DFC. *Id.*

A taxpayer must obtain a "qualified appraisal" of property if a donation of that property results in a claimed deduction of more than $5,000. 26 U.S.C. § 10(f)(11)(C), (E). A "qualified appraisal" must be prepared, signed, and dated by a "qualified appraiser[.]" 26 C.F.R. § 1.170A-13(c)(3)(i)(B). A "qualified appraiser" is an individual who (A) holds himself or herself out to the public as an appraiser or performs appraisals on a regular basis; (B) is qualified to make appraisals of the property type being valued; and (C) the appraiser is not excluded from being a qualified appraiser. 26 C.F.R. § 1.170A-13(5)(i)(A)-(C). A "qualified appraiser"

may not be fill any of the following roles: (A) the donor; (B) a party to the transaction in which the donor acquired the property being appraised; (C) the donee of the property; (D) any person employed by any of the foregoing persons; (E) any person related to any of the foregoing persons; or (F) an appraiser who does not perform a majority of appraisals made during the taxable year for other persons. 26 C.F.R. § 1.170A-13(c)(5)(iv)(A)-(F).

The United States argues that the Treasury Regulations disqualified Tarpey from conducting timeshare appraisals for DFC for three reasons: (1) the regulations exclude the donee of the property from preparing appraisals; (2) Tarpey was "related" to DFC; and (3) Tarpey only appraised timeshares to be donated to DFC. *See* 26 C.F.R. § 1.170A-13(c)(5)(iv)(C), (E), (F). The United States argues that the Treasury Regulations excluded Suzanne Tarpey, Ron Broyles, and Curt Thor from preparing appraisals for DFC for the same reasons. (Doc. 31 at 22-24.)

## 1. DFC was the Donee of the Property

DFC is the donee. Tarpey founded Project Philanthropy. Project Philanthropy conducted business as DFC in 2006. (Doc. 39 at 4.) DFC obtained tax exempt status from the IRS. Timeshare owners donated their timeshares to DFC. No genuine issue of material fact exists in relation to these matters.

Tarpey argues nevertheless that Resort Closings – Tarpey's for-profit company – was the client for appraisal purposes. (Doc. 38 at 6.) Tarpey concedes

that DFC served as the donee. (Doc. 38 at 6.) Federal regulations require that any person that considered to be the donee of DFC may not perform appraisals of timeshares to be donated to DFC.

### 2. Tarpey was the Donee of DFC and was "Related" to DFC

The United States considers Tarpey to have been the donee of the timeshares and argues that he was "related" to DFC. (Doc. 31 at 21.) Tarpey contends that he did not exercise sufficient control over DFC to be considered the donee. (Doc. 38 at 6.) *Id.* Tarpey asserts that he remained "largely unconnected" to DFC. *Id.*

The Treasury Regulations exclude "[t]he donee of the property" from being a qualified appraiser. 26 C.F.R. § 1.170A-13(5)(iv)(C). The regulations further exclude persons "related" to the organization through direct or indirect control of the organization. 26 C.F.R. § 1.170A-13(5)(iv)(E); 26 U.S.C. § 267(b)(9). The United States argues that Tarpey controlled DFC – either directly or indirectly. No factual dispute exists regarding Tarpey's role for DFC. The dispute relates to whether Tarpey's connection to DFC amounted to sufficient control over DFC.

It remains undisputed that Tarpey served as the sole voting member of DFC. (Docs. 11 at ¶ 26 & 12 at ¶ 26.) Tarpey possessed direct control over the organization due to his role as the sole voting member at DFC. No issue of fact exists that only Tarpey could appoint and remove board members at DFC. *Id.*

Tarpey also retained indirect control over DFC through his power to appoint and remove board members.

The United States relies on the tax court's decision in *Mohamed v. Comm'r*, 103 T.C.M. 1814 (T.C. 2012). *Mohamed* involved a real-estate appraiser who created a charitable trust. *Id.* at *1. The appraiser made himself the trustee of the charitable trust. *Id.* The trust allowed taxpayers to claim immediate deduction for a portion of property donated to the trust. *Id.*

The appraiser donated five of his own properties worth millions of dollars to the trust. *Id.* The appraiser's actions established him as both the trustee of the trust and the donor to the trust. *Id.* The tax court evaluated whether the appraiser remained qualified under the Treasury Regulations to perform appraisals for the trust. *Id.* at *4. The tax court reasoned that the appraiser's role as the trustee of the trust effectively rendered him the donee of the trust. *Id.* The Treasury Regulations excluded the appraiser from appraising property for the trust. *Id.*

Tarpey argues that his role at DFC differs from the appraiser's roles in *Mohamed*. (Doc. 38 at 7.) Tarpey contends that his relationship to DFC proves less significant than the appraiser's relationship as trustee in *Mohamed*. *Id.* The appraiser in *Mohamed* created the trust for which he was excluded from serving as an appraiser. Tarpey similarly created DFC. The appraiser's status as the donee of

the trust in *Mohamed* disqualified him as an appraiser for the trust. Tarpey's relationship to DFC established him as the donee under the Treasury Regulations.

The appraiser in *Mohmed* also was "related" to the trust by virtue of serving as the trustee. Tarpey's direct and indirect control over DFC similarly rendered him "related" to DFC. A trustee of a trust who also serves as the donee of that trust stands no different than a person who serves as the donee, and is "related" to the organization. Tarpey's connection to DFC excluded Tarpey from performing appraisals for DFC.

### 3. Tarpey Appraised Timeshares Only for DFC

The Treasury Regulations exclude any person "who does not perform a majority of his or her appraisals made during his or her taxable year for other persons." 26 C.F.R. § 1.170A-13(c)(5)(iv)(F). The United States argues that Tarpey failed to diversify sufficiently his appraisal practice. (Doc. 31 at 22.) Tarpey concedes that he prepared only appraisals to be donated to DFC.

Tarpey likens his connection to DFC to the tax court's analysis in *Val Lanes Recreation Center Corp. v. Commissioner*, T.C. Memo 2018-92 (2018). *Val Lanes* involved a bowling alley ("petitioner") that operated an S corporation for federal tax purposes. *Id.* at *1. Petitioner created a stock ownership plan and related trust upon the recommendation of a certified public accountant. *Id.* The accountant

prepared the plan and trust documents. The accountant also prepared forms for the trust.

Petitioner retained the accountant to perform appraisals to value petitioner's stock. The tax court analyzed whether the accountant stood sufficiently independent from the organization. *Id.* at *8. The IRS determined that the appraiser had possessed an "inherent lack of independence" because he performed a number of services for the organization each year. *Id.* The IRS reached its conclusion based on the facts that the appraiser had prepared forms detailing the organization's assets, had performed and submitted appraisals valuing the organization's stock, and had received regular income from the organization. *Id.* The appraiser did not otherwise hold himself out to the public as an appraiser. *Id.*

The tax court disagreed with the IRS's determination. The appraiser did not fall within any of the exclusions specifically listed in section 1.170A-13(c)(iv). Tarpey's connection to DFC differs from the appraiser's connections in *Val Lanes*. The appraiser in *Val Lanes* merely prepared paperwork and forms for the organization. He did not exercise control over the organization. Tarpey possessed both direct and indirect control over DFC. The appraiser in *Val Lanes* did not hold himself out publicly as an appraiser. No genuine issue of material fact exists that Tarpey held himself out publicly as an appraiser. (Doc. 32 at 16.) The appraiser in Val Lanes did not fit within any of the specific exclusions provided in the Treasury

Regulations. Tarpey fits squarely within at least three of the exclusions. Tarpey constitutes the donee, Tarpey is "related" to DFC, and Tarpey did not appraise timeshares for any organization other than DFC. *See* 26 C.F.R. § 1.170A-13(c)(5)(iv)(C), (E), (F). These exclusions prohibited Tarpey from appraising timeshares for DFC.

### 4. Tarpey Caused Others to Make or Furnish Statements

The United States argues that the Treasury Regulations excluded Suzanne Tarpey, Curt Thor, and Ron Broyles from preparing appraisals for timeshares. (Doc. 31 at 22-24.)

#### a. The Treasury Regulations Excluded Suzanne Tarpey from Being a Qualified Appraiser

The United States asserts that the Treasury Regulations excluded Suzanne Tarpey from preparing appraisals for timeshares to be donated to DFC. (Doc. 31 at 22.) The United States argues that Suzanne Tarpey possessed several conflicts: (1) she is Tarpey's sibling; (2) she served as an employee of DFC; and (3) she appraised timeshares only for DFC. *Id.* at 23.

Tarpey and Suzanne Tarpey are brother and sister. The Treasury Regulations impute siblings to have the same conflicts as one another. 26 U.S.C. § 267(b)(1). Tarpey argues that the Treasury Regulations did not exclude him as an appraiser. Tarpey contends that Suzanne Tarpey did not possess a conflict. (Doc. 38 at 7.) The Court has determined that the Treasury Regulations excluded Tarpey as an

appraiser for at least three reasons – (1) his status as the donee; (2) his control over DFC; and (3) his failure to diversify his appraisal work. The Treasury Regulations excluded Suzanne Tarpey simply by virtue of her relation to Tarpey. *See* 26 U.S.C. § 267(b)(1).

Suzanne Tarpey faced her own conflicts. DFC employed Suzanne Tarpey as its secretary, treasurer, and bookkeeper. (SUF ¶ 14.) The Treasury Regulations exclude "[a]ny person employed" by the donee of the property. 26 C.F.R. § 1.170A-13(c)(5)(iv)(C), (D). Suzanne Tarpey prepared nearly 600 appraisals for DFC. (SUF ¶¶ 32, 42, 57.) Suzanne Tarpey verified that she qualified under the Treasury Regulations to perform each appraisal that she prepared for DFC. *Id.* Suzanne Tarpey appraised timeshares only for DFC. *Id.* Suzanne Tarpey failed to diversify her appraisal practice as required by the Treasury Regulations. *See* 26 C.F.R. § 1.170A-13(c)(5)(iv)(F). The undisputed facts establish that the Treasury Regulations excluded Suzanne Tarpey from preparing appraisals for DFC.

### b.  The Treasury Regulations Excluded Broyles and Thor from Being Qualified Appraisers

The United States argues that the Treasury Regulations similarly excluded Broyles and Thor from conducting qualified appraisals. (Doc. 31 at 23.) Tarpey argues that the exclusions in the Treasury Regulations did not apply as Broyles and Thor received the majority of their appraisal income from Resort Closings or Timeshare Specialists, rather than from DFC. (Doc. 38 at 7-8.)

14

The undisputed facts demonstrate that approximately 57 percent of Thor's appraisal business consisted of appraisals of timeshares to be donated to DFC. (Doc. 32 at ¶ 43.) Broyles identified Tarpey as his client. *Id.* at ¶ 47, 50. Broyles prepared the majority of his timeshare appraisals for DFC. *Id.* Broyles derived 97.5 percent of his income from appraisals that he prepared for DFC for the time period in question. *Id.* at ¶ 52. In fact, Broyles derived 100 percent of his income from appraisals that he prepared for DFC in 2011, 2013, and 2014. *Id.* at ¶ 51, 53, 54. Broyles and Thor regularly performed the majority of their appraisals for DFC. The undisputed facts demonstrate that the Treasury Regulations excluded Broyles and Thor from appraising timeshares for DFC. *See* 26 C.F.R. § 1.170A-13(c)(5)(iv)(E).

Tarpey, Suzanne Tarpey, Ron Broyles, and Curt Thor lacked sufficient independence from DFC to serve as qualified appraisers under the Treasury Regulations. The undisputed facts demonstrate that each of these people performed appraisals for DFC. The Treasury Regulations excluded these people from preparing appraisals for at least one reason. The undisputed facts demonstrate, therefore, that Tarpey made or furnished false statements regarding timeshare appraisals. Tarpey also caused Suzanne Tarpey, Ron Broyles, and Curt Thor to make or furnish such false statements. The United States has shown by a

preponderance of the evidence that Tarpey violated the second element of 26 U.S.C. § 6700(a)(2)(A).

## I.     Tarpey Knew or had Reason to Know that the Statements were False or Fraudulent.

The third element of 26 U.S.C. § 6700(a)(2)(A) requires the moving party to show by a preponderance of the evidence that the non-moving party knew or had reason to know that the disputed statements were false or fraudulent. *See Estes Pres. Servs.*, 202 F.3d at 1098. The United States argues that Tarpey knew or had reason to know that his statements regarding qualified appraisal practice were false. (Doc. 31 at 24.) Tarpey argues that his statements were not false. (Doc. 38 at 8.) Tarpey contends that he relied in good faith on the advice of counsel and other qualified professionals even if his statements turned out to be false. *Id.* The Court has determined that Tarpey falsely submitted statements regarding the qualified appraisals. The Court must analyze only whether Tarpey knew, or had reason to know, that the disputed statements were false or fraudulent.

Summary judgment with regard to a penalty under 26 U.S.C.§ 6700 may not apply if a party relied in good faith on advice of counsel. *See United States v. Nordbrock*, 828 F.3d 1401, 1404 (9th Cir. 1987). The trier of fact must determine whether, and to what extent, the reliance on advice of counsel constitutes a defense. *Id.* (*citing Swayze v. United States*, 785 F.2d 715, 717 (9th Cir. 1986)).

The record first demonstrates that certified public accountant George Schramm advised Tarpey that he was qualified under the Treasury Regulations to be an appraiser of non-real property. (Doc. 39-14.) Tarpey obtained advice from Schramm regarding whether the right to use timeshares constitutes real or personal property. (Doc. 39-16.) Schramm advised Tarpey regarding situations in which a generic charity sells donated property at prices below appraised fair market value. This information explained the effect that such sales may have on a donor's charitable contribution deduction. (Doc. 39-17.) Tarpey argues that he relied on advice of counsel to conduct appraisals. (Doc. 38 at 9.) The record reflects that Tarpey relied on such general advice.

The record fails to establish, however, that Schramm, or any other professional, ever advised Tarpey that he met all of the criteria to serve as a qualified appraiser for his scheme within the meaning of the Treasury Regulations. The record instead shows that counsel advised Tarpey that appraisals needed to be performed by a qualified appraiser within the meaning of the Treasury Regulations. (*See* Docs. 39-17 at 9 & 39-14 at 1, 2.) Tarpey's reliance on counsel in Exhibits 14, 16, and 17, fails to demonstrate that Tarpey relied on counsel with regard to "qualified appraisers" and "qualified appraisals" under the Treasury Regulations with respect to this scheme.

The United States alleges that Tarpey's statements regarding his appraisal practice proved false under the Treasury Regulations. Advice of counsel on subjects unrelated to appraisal practice under the Treasury Regulations proves irrelevant to the United States's Motion. The record demonstrates that Tarpey did not rely on advice of counsel regarding whether he could serve as a "qualified appraiser[]" or perform "qualified appraisals" under 26 C.F.R. § 1.170A-13(c)(5).

The record reflects that Tarpey knew, or had reason to know, that he made false statements regarding qualified appraisal practice. Tarpey signed a "Declaration of Appraiser" for each appraisal that he peformed. (Doc. 32 at ¶ 66.) Tarpey promised in this declaration that he knew the Treasury Regulation exclusions. *Id.* Tarpey declared, in effect, that he was aware that the donor of the property, the donee of the property, a related person, or an appraiser who does not perform a majority of their appraisals for other persons, all represented conflicts that would exclude him from serving as the appraiser. *See* 26 C.F.R. § 1.170A-13(c)(5)(iv).

Tarpey held himself out to the public as a professional timeshare appraiser. (Doc. 32 at ¶ 55.) Tarpey failed to disclose to timeshare owners that he possessed sole voting power for DFC. *Id.* at 64. Tarpey failed to disclose that he controlled, at least indirectly, the board of DFC. *Id.* Tarpey failed to disclose that he likewise retained control over Resort Closings, Charity Marketing, and Timeshare

Specialists. *Id.* Tarpey's acknowledgment that he knew the regulations and his repeated appraisals for DFC demonstrates that he knew or had reason to know that his statements were false. The record is clear that Tarpey violated the third element of 26 U.S.C. § 6700(a)(2)(A).

## II.     The United States's Motion for Order Applying Issue Preclusion

The United States moved the Court for entry of an order of issue preclusion. (Doc. 28.) The United States argues that Tarpey is barred from collaterally attacking the final determination in *United States v. James Tarpey, et al.,* No. 2:15-cv-00072-SEH (D. Mont.). *Id.* at 1-2. Tarpey opposes the United States's motion. (Doc. 36.)

The United States asserts that an order of summary judgment in its favor resolves all material issues brought by the United States. (Doc. 122.) The Court has determined that the United States has met its burden regarding each element of its summary judgment motion. Judgment in the United States's favor for penalties under 26 U.S.C. § 6700 renders moot the United States's Motion for Order Applying Issue Preclusion (Doc. 28.)

## CONCLUSION

To establish a penalty under 26 U.S.C. § 6700(a)(2)(A), it must be demonstrated by a preponderance of the evidence that, (1) the defendant organized or sold, or participated in the organization or sale of, an entity, plan, or

19

arrangement; (2) defendant made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement; (3) defendant knew or had reason to know that the statements were false or fraudulent; and (4) the false or fraudulent statements pertained to a material matter. *United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000).

The first element is not in dispute. The United States has shown through a preponderance of the evidence that Tarpey made false statements concerning tax benefits to be derived from DFC. Tarpey could not serve as a qualified appraiser under the Treasury Regulations for these appraisals. Tarpey appraised timeshares, accepted donations, and promised donors charitable contributions on federal tax returns. The treasury regulations similarly excluded Suzanne Tarpey, Ron Broyles, and Curt Thor, from appraising the timeshares at issue. The United States has demonstrated that Tarpey knew, or had reason to know, that the he made false statements. The undisputed facts show that all of the appraisers lacked sufficient independence from DFC to be considered "qualified appraisers" under the Treasury Regulations. The false appraisals resulted in tax avoidance The statements prove material. The United States has met its burden under 26 C.F.R. § 6700(a)(2)(A).

**ORDER**

Accordingly, **IT IS ORDERED** that the United States's Motion for Summary Judgment (Doc. 30) is **GRANTED.** Tarpey's liability for penalties pursuant to 26 U.S.C. § 6700 is resolved in favor of the United States. The parties continue to dispute the amount of penalties assessed pursuant to 26 U.S.C. § 6700. The amount of penalties is not resolved by this Order as this issue must be reserved for trial.

The United States's Motion for Order Applying Issue Preclusion (Doc. 28) is **DENIED AS MOOT**.

DATED this 19th day of March, 2019.

Brian Morris
United States District Court Judge