IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JAMES TARPEY,<br><br>Plaintiff and Counter-Defendant,<br><br>vs.<br><br>UNITED STATES,<br><br>Defendant and Counter-Plaintiff. | CV-17-94-B-BMM<br><br><br>**ORDER** ON **MOTION TO EXCLUDE EXPERT REPORT** |

Plaintiff and Counter-Defendant James Tarpey filed a Motion to Exclude Expert Report of Bruce G. Dubinsky. (Doc. 92). Defendant and Counter-Plaintiff the United States opposes the motion. (Doc. 97). Tarpey filed a reply. (Doc. 98). The Court deems it appropriate to resolve the matter without the need for a hearing.

BACKGROUND

The Court has issued two separate orders regarding summary judgment. (Docs. 51 and 83). The Court initially resolved Tarpey's liability for penalties pursuant to 26 U.S.C. § 6700 in favor of the United States. (Doc. 51 at 21). The Court's first order left unresolved the amount of penalties to be assessed against

1

Tarpey. (*Id.* at 21). The Court conducted a second hearing on August 22, 2019, at which the parties disputed the amount of penalty for which Tarpey should be liable. The United States requested that the Court enter judgment against Tarpey for the unpaid balance of the § 6700 penalty, totaling $9,025,265.24 plus interest. Tarpey countered that his penalty should be $270, 215.

The Court rejected Tarpey's claim that his appraisals of timeshare donations to DFC represented the only activity for which the Court had determined him to be liable. (Doc. 83 at 6). The Court determined instead that the "activity" giving rise to the penalty to be imposed against Tarpey encompassed the entire arrangement facilitated and organized by Tarpey to solicit timeshare donations, appraise the timeshares, and direct profits to his other organizations. (*Id.*) The Court further deemed it appropriate to pierce the corporate veil to impute DFC's income to Tarpey as DFC served as Tarpey's alter ego. (*Id.* at 9-16). The Court declined, based on the record before it, to declare the amount of the penalty to be assessed against Tarpey. (*Id.* at 16-18). The Court concluded that the discrepancy in the calculation presented by the United States rose to the level of a genuine issue of material fact that precluded summary judgment. (*Id.* at 18).

The Court next conducted a telephonic status conference to address amendments to the scheduling order. Following "discussion and agreement by the parties," the Court directed the parties to disclose their expert witnesses regarding

2

the amount of the penalty by January 31, 2020. (Doc. 88 at 1). The Court granted a motion by the United States (Doc. 90) to extend the disclosure deadline to March 31, 2020. (Doc. 91).

## DISCUSSION

Tarpey bases his motion to exclude on the application of three doctrines: judicial estoppel, judicial admission, and the law of the case. (Doc. 94). The Court addresses the application of these doctrines in turn below.

1. **Judicial Estoppel**.

Tarpey argues first that the United States should be judicially estopped from presenting a new theory on how it derived Tarpey's penalty and the accompanying amount. (Doc. 94 at 13-15). Judicial estoppel prevents a party from "playing fast and loose with the courts" and avoiding unfair results and unseemliness by adopting conflicting positions in different stages of the same proceeding. *Teleglobe Commc'n Corp. v. BCE, Inc.*, 493 F.3d 345, 377 (3d Cir. 2007).

The Court must analyze the following three factors to determine whether the United States should be judicially estopped from presenting its expert witness: 1) the "party's later position must be clearly inconsistent with its earlier position;" 2) "the party must have succeeded in persuading a court to accept that party's earlier position;" and 3) there must be an unfair advantage to be gained by the party

3

seeking to assert the inconsistent position. *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 558 (9th Cir. 2016) (citation omitted).

Tarpey cites to several cases in support of his argument. The Third Circuit in *Teleglobe Communications Corp.*, declined to apply the doctrine of judicial estoppel in the context of an attorney/client privilege claim. 493 F.3d 345, 377 (3d Cir. 2007). The debtors took issue with the position taken by the controlling corporation that its counsel never had represented it and the debtors. *Id.* The debtors argued that the controlling corporation had relied on a joint representation agreement in the bankruptcy court to assert a claim of privilege. *Id.* The debtors contended that the controlling corporation's representation had induced the bankruptcy court and the special master to rely on the controlling corporation's concession that common-interest documents had been produced. *Id.* The court concluded that the matter looked "more like a legitimate disagreement over the scope of any joint representation (mixed with a dose of sloppiness) than it does a bad faith attempt to mislead the courts." *Id.* Tarpey makes no attempt to explain why that result compels application of judicial estoppel here.

The court in *Northern Oil & Gas, Inc. v. Continental Resources, Inc.*, 2017 WL 4287201, at *5-6 (D. Mont. Sept. 27, 2017), similarly concluded that judicial estoppel did not apply. There the court addressed a dispute concerning competing oil and gas leases in Montana. Continental Resources, Inc. (Continental) alleged

that Northern Oil & Gas, Inc. (Northern) had taken an inconsistent position in earlier proceedings before the Montana Board of Oil and Gas regarding its intent to consent to a lease. The court rejected application of judicial estoppel based on its determination that Northern did not express an intent with respect to the lease and therefore Northern's current position did not conflict with its prior position. *Id.* at *6. Additionally, even assuming Northern had taken an inconsistent position and had succeeded in its earlier position, the court concluded that Northern's actions amounted to an effort to allow it time to decide whether to make an election rather then an effort to gain an advantage in the litigation. *Id.* at *8.

The Court agrees with the United States that the second factor—the party must have succeeded in maintaining the earlier position—fails to support applying judicial estoppel to prevent the United States from presenting Dubinsky's expert report. *Tohono O'odham Nation*, 818 F.3d at 558. The Tohono O'odham Nation had failed to persuade an arbitrator to accept its allegedly contradictory position in an earlier proceeding. The Ninth Circuit rejected application of judicial estoppel, in large part, because no unfair advantage could be had when the Nation had failed in its earlier position. *Id.* The United States likewise did not succeed in its prior position on the amount of penalty, and therefore, a "later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) (internal

5

citations omitted). The amount of Tarpey's penalty remains the "final issue before the Court." (Doc. 83 at 16).

The third factor and first factors similarly fail to favor Tarpey's argument. *Tohono O'odham Nation*, 818 F.3d at 558. The United States's position does not appear clearly inconsistent and will not result in an unfair advantage to the United States because it has explicitly agreed to seek no more than the penalty it originally sought, even though its expert report concluded that Tarpey actually benefited more from the scheme than previously indicated. (Doc. 97 at 7) ("[T]he United States *agrees* with Tarpey and *will not* seek a judgment exceeding the amount pled."). In that regard, the position is inconsistent, however, given the United States's agreement to seek no more than originally sought, no unfair advantage exists.

The United States was complying with this Court's previous order to provide a full accounting of the benefit that Tarpey derived from the scheme. (Doc. 83 at 18). Tarpey remains free to rebut that evidence by presenting his own evidence of the calculation and amount of benefit that he derived, and presenting arguments regarding the methodology of calculating the penalty.

The cases that Tarpey cites fail to persuade the Court otherwise. In *Teleglobe Communications Corp.*, the court ultimately declined to apply the doctrine of judicial estoppel, concluding that the matter looked "more like a


legitimate disagreement over the scope of any joint representation (mixed with a dose of sloppiness) than it does a bad faith attempt to mislead the courts." 493 F.3d 345, 377 (3d Cir. 2007).  Similarly, in *Northern Oil & Gas, Inc. v. Continental Resources, Inc.*, the court, assessing the factors described above, found that judicial estoppel did not apply.  2017 WL 4287201, at *5-6.

### 2. **Judicial Admissions.**

Tarpey next contends that the doctrine of judicial admission prevents the United States from arguing for a higher calculation of Tarpey's penalty. (Doc. 94 at 16-17). Tarpey argues that the initial methodology used by the United States to calculate Tarpey's gross income rises to the level of a judicial admission. (*Id.* at 19).  A judicial admission typically involves a stipulation to a certain fact or application of law to fact that removes a factual dispute from contention. *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 676-77 (2010). "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). These judicial admissions apply to matters of fact that, otherwise, would require evidentiary proof. *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963).

By contrast, legal arguments typically do not constitute judicial admissions. *See MacDonald v. General Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997). In *MacDonald*, plaintiffs sought a determination that certain statements of counsel at trial were "judicial admissions." *Id.* at 339. The court rejected that argument. The Sixth Circuit noted that "counsel's statements dealt with opinions and legal conclusions, and we are thus reluctant to treat them as binding judicial admissions." *Id.* at 341. The Sixth Circuit reasoned that the statements—which related to negligence and proximate causation—"require the application of rules of law to complex factual patterns." *Id.* Because the statements dealt with legal conclusions they did not "constitute binding judicial admissions." *Id.* A contrary rule would transform admissions, "a valuable time-saving device, the voluntary use of which should be encouraged, into a trap for the unwary." *Id.*

Tarpey argues that the United States has made a judicial admission to the extent it "represented that it calculated Mr. Tarpey's gross income, for purposes of the penalty calculation, by looking at two lines on DFC's form 990s." (Doc. 94 at 17). As noted, however, counsel's arguments regarding the manner of the penalty computation is not susceptible to judicial admission. *See Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 676-77 (2010). The Court interprets a methodology to represent an argument suggesting how law can be

8

applied to a set of facts rather a fact that can be admitted or denied. *MacDonald*, 110 F.3d at 341.

The amounts reported on the Forms 990, the underlying QuickBooks data, and other financial records represent "facts" that could be judicially admitted. These items are within Tarpey's personal knowledge and undisputed. *See Banks v. Yokemick*, 214 F.Supp.2d 401, 406 (S.D.N.Y. 2002) (noting that "judicial admissions generally pertain to binding assertions of *fact*, matters that a party unequivocally declares to be true because that party is uniquely positioned to know so and concede"). The Court further notes that it possesses discretion to construe statements of fact contained in a brief as admissions of the party. *Am. Title Ins. Co.*, 861 F.2d at 227. In this instance, however, the Court declines to characterize what it deems to be legal arguments as statements of fact.

### 3. **Law of the Case.**

Tarpey argues finally that the law of the case prevents the United States's effort "to sandbag" him. (Doc. 94 at 19-20). The law of the case doctrine provides that a court will not reexamine an issue previously decided by the same or higher court in the same case. *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012). The Ninth Circuit's decision in *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014), works against this claim. The Ninth Circuit concluded that "denial of a

summary judgment motion is never law of the case because factual development of the case is still ongoing." *Id.*

The Court denied the United States's motion for summary judgment regarding the proper computation of the penalty amount. The Court scheduled an evidentiary hearing for purposes of providing a "thorough and accurate assessment of Tarpey's penalty amount." (Doc. 83 at 18). "Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise." *Peralta*, 744 F.3d at 1088. The Court declines to apply law of the case principles in this context.

## CONCLUSION

IT IS ORDERED that the Tarpey's Motion to Exclude Expert Report of Bruce G. Dubinsky (Doc. 92) is **DENIED**.

DATED this 4th day of August, 2020.

_____
Brian Morris, Chief District Judge
United States District Court